UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JASPER LAMON ALLEN,

           Plaintiff,

v.                                                Case No. 23-cv-1341-pp

CINDY GILBERT and REBECCA JONES,

           Defendants.

---

**ORDER DENYING DEFENDANT JONES'S MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 19) AND SETTING DEADLINE FOR PLAINTIFF TO RESPOND TO DEFENDANT JONES'S MOTION FOR SUMMARY JUDGMENT ON THE MERITS**

---

Plaintiff Jasper Lamon Allen, who is incarcerated at Jackson Correctional Institution and is representing himself, filed this civil rights case. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim and a Wisconsin state law negligence claim based on allegations that defendants Cindy Gilbert and Rebecca Jones confined him in a cell with another person who had pneumonia (instead of isolating that individual) and the plaintiff contracted pneumonia. Dkt. No. 4 at 6-7. This order denies defendant Jones's motion for summary judgment on exhaustion grounds.[1] Dkt. No. 19.

---

[1] Defendants Gilbert and Jones, who are represented by separate counsel, both have filed motions for summary judgment on the merits. Dkt. Nos. 32, 38. The court will address the defendants' merits-based motions for summary judgment in a subsequent order.

1

## I. Facts[2]

The plaintiff was housed at Gordon Correctional Center at the time of the events described in the complaint. Dkt. No. 21 at ¶1. The court permitted him to proceed with Eighth Amendment deliberate indifference and negligence claims against defendants Sergeant Gilbert and Nurse Jones. Id. at ¶2. The plaintiff alleges that Gilbert is responsible for moving incarcerated individuals to different cells at Gordon Correctional Center. Id. at ¶3. He alleges that after he had been placed in a cell with an incarcerated individual named Leon Prince and after Prince was diagnosed with pneumonia, Jones failed to move Prince into another cell or isolate him which resulted in the plaintiff catching fungal pneumonia. Id. at ¶4.

The plaintiff submitted one inmate complaint regarding being placed in a room with an incarcerated individual with pneumonia: SCI-2023-3653. Id. at ¶5. Defendant Jones states that the plaintiff did not file any inmate complaint regarding Jones allegedly failing to later isolate Prince or move the plaintiff. Id. at ¶6. Jones also states that the institution complaint examiner did not investigate or decide the issues the plaintiff raises against Jones in this case. Id. at ¶7.

In his inmate complaint, the plaintiff describes his issue as: "Gordon staff put me in a room with a[n] inmate who had fungal pneumonia and I contracted it due to them not isolating him from me. I would like for staff to be

---

[2] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

disciplined and be guarantee[d] this won't happen again." Dkt. No. 22-2 at 10.

The plaintiff provided the following details:

> Jan 28th I was moved from a 10 man cell to a 3 man cell. The cell I moved in had a[n] inmate (Leon Prince) that was coughing uncontrollably. That day Leon Prince goes to hospital. He came back saying he had pneumonia. Instead of staff at Gordon isolating him, they kept me in the room with him. with him consistently coughing, the spores from pneumonia was in the air and I ended up contracting the fungal pneumonia within 5 days. My chest was hurting when I inhaled, I was short of breath and have high fevers. Feb 6th I had to go to hospital and was told I had 6.5 cu of fluid on my left lung. I ended up being in hospital for 16 days. I was released to Stanley because this was the close[s]t prison with 24 hr HSU care. I currently have to take meds for 6 months to a year. The doctor at the Hospital says and I possibly will have permanent lung damage.

Id.

The institution complaint examiner's "ICE Report" recommends dismissal of the plaintiff's inmate complaint and provides the following "Summary of Facts":

> PIOC [Person in Our Care, the plaintiff] submitted a DOC-400 indicating staff placed him in a room with another PIOC who was sick. Follow up with the staff member was conducted and process of room moves was explained. [The plaintiff] was next on the list to move out of a 10 man dorm and given the option of moving. [The plaintiff] voluntarily moved into the 3 man room. [The plaintiff] moved in the room on 1-28-23 and was assigned to the room for 5 days.
>
> Staff indicated they were unaware of medical condition of other PIOC at the time. At no time did [the plaintiff] request a room change or communicate his concerns with staff or supervisor. ICE recommends dismissing this complaint based on the information provided.

Dkt. No. 22-2 at 2. The reviewing authority accepted the recommendation and dismissed the plaintiff's complaint. Id. at 3.

The plaintiff filed an inmate complaint appeal in which he stated:

3

> I'm appealing my complaint because Gordon Correctional Center staff stated they were unaware of the medical condition of Leon Prince (my cellmate). They are lying because the day I moved in the room (1-28-23) Mr. Leon Prince went to the hospital and came back a couple hours later diagnosed with pneumonia. So they knew of his medical condition, because they took him to the hospital, and the doctors at the hospital made aware to Nurse Jones and the staff at Gordon Correctional Center of Leon Prince having pneumonia, yet they didn't isolate him, and since they kept me in the room with him I caught fungal pneumonia which had me hospitalized for 16 days.

Id. at 12. The corrections complaint examiner recommended dismissal of the plaintiff's appeal. Id. at 5. The office of the secretary accepted that recommendation and dismissed the appeal. Id. at 8.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

4

the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

Defendant Jones contends that the plaintiff failed to exhaust his available administrative remedies as to his deliberate indifference claim against her. Dkt. No. 20 at 7. According to Jones, the plaintiff's inmate complaint contained just one "clearly identified issue" which was that "Gordon staff put me in a room with an inmate who had fungal pneumonia . . . ." Id. Jones states that the "ICRS system" treated and investigated the plaintiff's complaint as if it were about his being placed in that cell, not about Jones's alleged acts or omissions at a later date. Id. Jones contends that the plaintiff did not file an inmate complaint related to his deliberate indifference claim asserted in this case—"that Nurse Jones was deliberately indifferent and could have prevented [the plaintiff] from contracting pneumonia if she had isolated Prince or moved [the plaintiff] after [he] was placed in the room with cellmate Prince and Prince was subsequently diagnosed with pneumonia." Id.

The plaintiff responds that he exhausted his administrative remedies regarding his claim against Jones. Dkt. No. 24 at 1. He explains that he wrote

5

"Gordon staff" on his inmate complaint form and that Sergeant Gilbert and Nurse Jones are staff at Gordon. Id. The plaintiff states that he "put 'Gordon staff' thinking that once the complaint was received and investigated, that the investigator would talk to Sgt. Gilbert and Nurse Jones, because they were the ones who knew of Leon Prince['s] conditions via him coming back from the hospital diagnosed with pneumonia the day [the plaintiff] moved in the room." Id. He explains that as he was moving his property into the cell on January 28, 2023, Prince went to the hospital and returned to Gordon diagnosed with pneumonia. Id. at 2.

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires an incarcerated person to comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The

6

Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The "Inmate Complaint Review System" (ICRS) within the Wisconsin prisons is the administrative remedy available to individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated individual may commence a civil action, he must exhaust all administrative remedies the Department of Corrections (DOC) "has promulgated by rule." Wis. Admin. Code §DOC 310.05. The ICRS is available for individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the institution complaint examiner (ICE) within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days

7

after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the corrections complaint examiner (CCE). Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The secretary affirms or dismisses the CCE's recommendation, or returns the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

"The PLRA exhaustion requirement ensures that 'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." Jackson v. Esser, 105 F.4th 948, 958-59 (7th Cir. 2024) (quoting Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013)). Assuming an incarcerated individual has taken all the administrative steps, his "complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" Id. at 959 (quoting Schillinger v. Kiley, 954 F.3d 90, 995 (7th Cir. 2020)). To exhaust under Wisconsin's prison rules, inmate complaints must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code. §DOC 310.09(1)(e). Wisconsin's rules do not contain a requirement that incarcerated plaintiffs name individuals in their inmate complaints. See also Jones v. Bock, 549 199, 217 (2007) ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement.").

Jones contends that because she didn't move the plaintiff into the cell with Prince, the inmate complaint could not have raised an issue related to the

plaintiff's claim against her (that she didn't isolate Prince after learning that he had pneumonia). But the plaintiff's inmate complaint SCI-2023-3653, which he fully exhausted, raises the issue that "Gordon staff put [the plaintiff] in a room with an inmate who had fungal pneumonia and [the plaintiff] contracted it *due to them not isolating [Prince] from [the plaintiff]*." Dkt. No. 22-2 at 10 (emphasis added). The plaintiff's inmate complaint explains that the day the plaintiff moved into the cell, Prince went to the hospital where he was diagnosed with pneumonia and when he returned from the hospital that same day, Gordon staff didn't isolate him. The ICE Report acknowledges that the plaintiff's inmate complaint relates to not only moving him into the cell with a sick individual (Prince), but also not isolating Prince or moving the plaintiff from the cell because it states that the plaintiff never "request[ed] a room change or communicate[d] his concerns[.]" Dkt. No. 22-2 at 2. The plaintiff has exhausted his claim against Jones. The court will deny Jones's motion for summary judgment on exhaustion grounds.

### III. Defendant Jones's Motion for Summary Judgment on the Merits

On September 20, 2024, the court ordered that the plaintiff's deadline to respond to Jones's motion for summary judgment on the merits was stayed until it ruled on Jones's motion for summary judgment on exhaustion grounds. Dkt. No. 37. Below, the court will set a deadline by which the plaintiff must respond to Jones's merits-based motion for summary judgment. If the court has not received the plaintiff's response by the deadline, the court has the authority to treat the motion as unopposed, accept all facts asserted by

9

defendant Jones as undisputed and decide the motion based only on the arguments in defendant Jones's brief, without any input from the plaintiff. That means the court likely will grant the motion.

## IV. Conclusion

The court **DENIES** defendant Jones's motion for summary judgment on exhaustion grounds. Dkt. No. 19.

The court **ORDERS** that the plaintiff must respond to defendant Jones's motion for summary judgment on the merits in time for the court to *receive it* by the end of the day on **January 10, 2025**. If the court does not receive either the plaintiff's response to defendant Jones's motion for summary judgment or an explanation for why he cannot timely file a response by the end of the day on January 3, 2025, the court will treat the motion as unopposed, that is, without considering a response from the plaintiff. Defendant Jones may file a reply with fourteen days after the plaintiff files his response.

Dated in Milwaukee, Wisconsin this 3rd day of December, 2024.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**